### No. 9746.

### M. DeLucas vs. New Orleans and Carrollton Railroad Company.

Railroad companies, as public carriers, have the right to eject passengers from their cars for non-compliance with their reasonable rules.

The rules of a city railroad company, acting under a contract with the city, which requires the company to carry passengers over two sections of its line for one fare, which requires such passenger to keep and show, undetached by him, a coupon ticket, as a voucher of his right to continue on the car beyond a given point, are reasonable in law.

Any passenger refusing to comply with said rules may be ejected from the car.

APPEAL from the Civil District Court for the Parish of Orleans. *Houston,* J.

*R. H. Downing* and *F. Kernan,* for Plaintiff and Appellant.

*John M. Bonner,* for Defendant and Appellee :

1. Carriers of passengers have the right to make reasonable rules and regulations for the management of their business.
2. The rule, requiring the blue coupon to remain on the strip of tickets until detached by the collector at Napoleon Avenue, under the double system of fare and the changing of

all the drivers, where the second fare is collected, is not only reasonable but is abso·lutely necessary to secure the collection of the second fare.

3.  Passengers are bound to observe the reasonable rules and regulations of the carrier, and should be expelled from the car for disobedience of them. Hutchinson on Carriers, §§ 569 to 573, 587, 588, 590; 71 Pa. St. 432; 56 N. Y. 300; 15 N. Y. 464; 51 N. Y. 105; 42 Am. R. 669; 34 Am. R. 277; 35 Am. R. 278; C. L. J., vol. 18, p. 394; 135 Mass. 407; Wood on Railways, p. 1429; Thompson on Carriers of Passengers, pp. 340, 375; 38 Howard Pr. R., p. 327.

4.  When expulsion is wrongful and unaccompanied with aggravating circumstances, the measure of damages is the actual loss sustained by the expulsion. Rorer on R. R., vol. 2, p. 865, § 15; Wood on Railways, pp. 1433, 1439; 23 Ohio St., p. 21; 29 Ohio St. 129, 134; 75 Ill., 125, 132; 4 Wal. 605; 15 N. Y. 464; 56 N. Y. 300.

This is an action brought by the plaintiff against the defendant to recover the sum of $5000 as damages for being ejected from one of defendant's cars.

The plaintiff obtained three small verdicts from three different juries, before the lower court, each of which was promptly set aside by the trial judge.

The case was then submitted to the court on the evidence and judgment was rendered in favor of defendant.

From that judgment the plaintiff prosecutes this appeal.

————

The opinion of the Court was delivered by

POCHÉ, J.  Plaintiff seeks to recover damages in the sum of five thousand dollars against the defendant, for having been illegally and violently ejected by one of the company's employees from one of its cars on which he was a passenger.

He prosecutes this appeal from an adverse judgment.  Verdicts rendered in his favor by two different juries had been set aside by the judge of the district court, who was finally authorized by consent to try the case without a jury.

It appears, from the record, that under a contract with the city of New Orleans, the defendant company obtained its franchise to run passenger cars from Canal street to Carrollton, formerly a suburban village, now a part of the city of New Orleans—a distance of six miles. The run between Canal street and Napoleon Avenue is made by cars propelled by mule or horse power, and between Carrollton and Napoleon avenue the cars are run by steam.  At the avenue, the drivers who have come from Canal street go no further and return; the same change being made with regard to the engineers in charge of the cars on the upper section of the line.

In the contract the fare is fixed at five cents between Canal and Napoleon avenue, or any intervening point, and the same fare was required between Carrollton and the avenue or intervening points.  But a concession was made in favor of actual residents of the city above Napoleon avenue, who had the privilege of making the whole run of the line for one fare, or five cents, provided they agreed to purchase

not less than ten tickets at a time, at the price of fifty cents for the ten.

In carrying out that part of its contract the company issued bunches of tickets of ten each, to be sold only to actual residents above Napoleon avenue, every two coupons of which were intended to represent a ride on the cars above and below the avenue, either from Carrollton to any point below, or from Canal to any point above the avenue.

It then adopted and gave publication of, rules to regulate the manner of using such tickets—of which there were ten red and ten blue in each bunch, and perforated so as to be detached without effort and without mutilating either the detached or remaining tickets.

Under the rules of the company the red ticket, which was good for the first part of the ride either up from Canal or down from Carrollton, or intervening points, had to be detached by the passenger and by him deposited in the fare box. At Napoleon avenue there was a collector to receive all fares on every car, either up or down, and to him the blue ticket, corresponding to the red which had been put in the box by the passenger, was good for the balance of the ride ; but, under the rules, and according to a notice printed on the ticket itself, the passenger was not allowed to detach it from the bunch, as it was not good if detached, by any one but the collector.

The company had given stringent orders to their collectors to vigorously enforce this rule, and to carry no passengers who would refuse to comply therewith. The system went into operation on the 1st of November, 1882, the rules, printed on paste-boards, had been posted at every station on the road and in every car, and had been published in all the daily papers in the city, for ten days before they were enforced. It is not denied that they were fully known to the plaintiff in this case.

Now it appears that on the 11th of November following, plaintiff, who resided above Napoleon avenue, entered one of the defendant's cars at a point above the avenue, on his way down to Canal street, and deposited one of the red tickets, hereinabove described, in the fare box. On reaching the avenue station, and the car being about to leave on the down trip, he was called on for his fare by one of the collectors, to whom he tendered a detached blue ticket.

This was refused by the collector with the information that under the rules it was not good unless detached by the collector himself, and that the party should either hand to the company's agent a bunch of tickets from which he could himself tear out a blue ticket, or pay the

regular fare, either in currency or by means of a red ticket. On the party's refusal to comply with either of the designated modes, he was ejected from the car by the collector in charge, with the assistance of another collector, whom the former had called to his aid. The removal of plaintiff from the car was accomplished without violence and without unnecessary force.

The evidence is conflicting on several important points of the foregoing statement, but we consider the facts as we have related them to be established by the preponderance of the testimony in the record, after a close scrutiny and a careful analysis thereof.

Under these facts, the law of the case involves two propositions:

1st. Have public carriers the legal right to eject passengers from their cars for non-compliance with their rules?

2d. Were the rules of the defendant company now under discussion reasonable?

I.

Although public carriers have the duty of transporting all passengers for reasonable compensation, they are not thereby stripped of any of their rights of property and ownership over the appliances which they use for the transportation of such passengers.

They have, in common with all other parties, the right to enforce the performance of the contracts which they make with persons, looking to the transportation of such persons, and to remove any passenger who may refuse to comply with the stipulations of the contract.

A person who refuses to present or show his ticket, or to pay his fare when called on to do so, on a train or car, becomes a trespasser, and thus becomes liable to ejection exactly as any other trespasser could be expelled from premises which he had illegally entered.

Under certain circumstances it is not only the right, but the clear duty, of a public carrier as an act of justice to its other passengers, and under its responsibility for the safe and speedy transportation of its passengers, to eject or remove a recalcitrant or obstreperous person who wantonly refuses to comply with the reasonable and necessary rules adopted by the carrier. The indulged disorder or refusal of one passenger would engender the same conduct in others, and soon the travel would become neither comfortable nor safe.

A party who refuses to comply with the mode of paying his fare as agreed upon between himself and the carrier is under the same condition of one who refuses absolutely to pay any fare at all; and hence, the only alternative is to carry him for nothing, or to eject him if he

refuses to leave when requested so to do.  No one has the right to exact transportation of a public carrier without compensation.

## II.

The question now recurs to the inquiry whether the rules of the defendant company were reasonable.

Under the contract between the company and the city, stipulating an advantageous exception in favor of actual residents above Napoleon avenue, the railroad company had the undoubted right to devise and adopt some means by which they could restrict the privilege thus contemplated to the persons for whom it had been intended.  Now, as the employees in charge of cars below Napoleon avenue were not the same who had charge of the cars on the upper section of the line, it strikes us that the means adopted and hereinabove described were quite reasonable and exposed the parties entitled to the privilege to no serious inconvenience.

We must note that the condition of buying not less than ten tickets at a time by that class of persons was exacted under the terms of the contract by the city authorities, and for reasons which are very apparent.

Under the system adopted, the real consideration of the ride on the part of the residents above Napoleon avenue—either on an up or down trip—was the red ticket, and the blue ticket forming a coupon therewith and attached thereto was simply a voucher of the right of the party to continue his ride on the car beyond Napoleon avenue, which was the geographical centre of the contract.  Now, in order to prevent either fraud or imposition on the company, either by imitations or by persons who could pick up the blue tickets and had not held the red one, which was the principal consideration of the contract, and so expressed on its face, it was certainly reasonable to adopt the rule that to be used as a voucher, the blue ticket should remain attached to the bunch until it was torn therefrom by the agent or collector.  Hence, we conclude that the rules of the company were reasonable, and that a non-compliance therewith by a passenger exposed him to be legally ejected from the car.

These views find sanction not only in reason, but are amply supported by most respectable authorities.  Hutchinson on Carriers, secs. 569, 571, 572, 563, 587, 588, 590; Wood's Railway Law, p. 1429; Louisville and Nashville R. R. Co. vs. Harris, 42 American Reports, 669; Howard's Practice Reports, vol. 33, p. 327; Walker vs. Dry Dock, etc., Company, 15 New York Rep. 455; Hibbard vs. New York and Erie, 51

New York Rep. 105; Hamilton vs. New York Central R. R. Co., 56 New York Rep. 300; Townsend vs. New York Central R. R. Co.

Now, in the instant case, either the plaintiff had bought a bunch of tickets and had deposited a red one in the box, or he held no bunch. If he had, it was his duty to present the bunch to the collector so that the latter could detach the blue ticket, and his non-compliance therewith was a violation of his contract with the carrier which exposed him to ejection. If he had not owned a bunch of tickets from which he had detached the red ticket, then the blue ticket which he tendered to the collector was not the required voucher under the contract and under the rules—in that event he was simply an intruder on the cars, and his ejection therefrom was justifiable in law.

In either event the company has been guilty of no wrong towards him, and hence it cannot be held in damages.

Judgment affirmed.